UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANTHONY GATTINERI and BOSTON CLEAR WATER COMPANY, LLC, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:20-cv-11404-IT |
| TOWN OF LYNNFIELD; PHILIP B. CRAWFORD, Chairman, Lynnfield Board of Selectmen; JAMES M. BOUDREAU, Lynnfield Town Administrator; ROBERT J. DOLAN, Lynnfield Town Administrator; ROBERT CURTIN, Assistant Town Administrator; DAVID J. BREEN, Chief, Lynnfield Police Department; PAUL MARTINDALE, Chairman, Lynnfield Conservation Commission; ELIZABETH ADELSON, Director of Planning & Conservation for the Town of Lynnfield; KRISTIN MCRAE, Administrator, Lynnfield Board of Health; JOSEPH O'CALLAGHAN, Building Inspector, Town of Lynnfield; WINNIE BARRASSO, Administrative Assistant, Lynnfield Building Department; PATRICK MCDONALD, Inspector for the Town of Lynnfield; JENNIFER WELTER, Assistant to the Lynnfield Director of Planning and Conservation; and EMELIE CADEMARTORI, Director of Planning & Conservation for the Town of Lynnfield, | * * * * * * * * * * * * * * * * * * * * * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

August 17, 2021

TALWANI, D.J.

Plaintiffs Anthony Gattineri and Boston Clearwater Company, LLC ("BCW") bring this

action against the Town of Lynnfield and numerous Lynnfield officials. Plaintiffs allege that the

Lynnfield officials conspired with several non-parties to deprive Plaintiffs of their constitutional rights and violated state law. Pending before the court is Defendants' <u>Motion to Dismiss</u> [#53]. For the following reasons, the motion is GRANTED.

## I.      Factual Background[1]

### A.      *The Defendants*

Lynnfield is a Massachusetts town that operates with a town meeting form of government. Lynnfield Charter 2 [#53-1].[2] Lynnfield's executive branch consists of a three-member elected Board of Selectmen ("Board") together with a Town Administrator. <u>Id.</u> at 4-8. When this action was filed, Philip Crawford was the chairperson of the Board, Robert Dolan was the Town Administrator, and Robert Curtin was the Assistant Town Administrator. Am. Compl. ¶¶ 10-11, 13 [#49]. James Boudreau preceded Dolan as Town Administrator and resigned in December 2017. <u>Id.</u> at ¶ 12. David Breen was the Chief of the Lynnfield Police Department until he retired in late 2020. <u>Id.</u> at ¶ 14.

Several other town bodies are implicated in this dispute. The Lynnfield Conservation Commission administers and enforces state and local laws and regulations related to the conservation of wetlands, among other things. Paul Martindale was a member and former

---

[1] The background is drawn from the <u>Amended Complaint</u> [#49], as well as from documents filed in numerous related state court actions, of which the court takes judicial notice. <u>See</u> <u>Giragosian v. Ryan</u>, 547 F.3d 59, 66 (1st Cir. 2008) (quoting <u>Boateng v. InterAmerican Univ., Inc.</u>, 210 F.3d 56, 60 (1st Cir. 2000)) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss. Matters of public record ordinarily include 'documents from prior state court adjudications'").

[2] In a town meeting form of government, a town meeting is both an event and an entity. As an event, it denotes a gathering of the town's eligible voters and is referred to as "the town meeting." As an entity, it is the legislative body and is referred to simply as "town meeting." For example, an eligible voter might attend a town meeting, and town meeting might vote to approve the budget. <u>See</u> Sec'y of the Commonwealth, Citizen's Guide to Town Meetings (March 9, 2008), https://www.sec.state.ma.us/cis/cispdf/Guide_to_Town_Meetings.pdf.

chairman of the Conservation Commission until he resigned in 2020; Elizabeth Adelson was its Director of Planning and Conservation until her retirement in 2019; Emilie Cademartori is the current Director of Planning and Conservation; Patrick McDonald is the Geographic Information System Coordinator and Field Inspector; and Jennifer Welter is an assistant to the Director of Planning and Conservation. Id. at ¶¶ 15-17, 21-22.

The Board of Health is responsible for ensuring compliance with state and local health regulations, and Kristin McRae is its Health Director. Id. at ¶ 18. The Building Department enforces state and local building laws and regulations, and the Zoning Board of Appeals ("ZBA") hears appeals from decisions of the Building Department. Joseph O'Callaghan is the Building Inspector, and Winnie Barasso is the administrative assistant to the Building Department and the ZBA. Id. at ¶¶ 19-20.

B.    *The Alleged Non-Party Conspirators*

Plaintiffs allege that several non-parties were involved in conspiring against them. Id. at ¶¶ 23-27. The Lynnfield Center Water District is a municipal entity that produces and distributes potable water to residential and commercial property owners in the town. Id. at ¶ 23. Willis O'Brien, Mary Bliss, and Andrew Gallucci are neighbors and abutters to the property at issue. Id. at ¶ 24. John Farell, also a neighbor, is the president of the Pocahontas Green Belt Corp. ("Green Belt"), a non-profit representing approximately three dozen local property owners. Id. at ¶ 25; see also Mem. & Order, Boston Clear Water Co. LLC v. O'Brien, No. 1777-cv-01722, at *1-2 (Mass. Super. Sept. 21, 2018). Roy Sorli is a member of the Lynnfield Historical Commission. Am. Compl. ¶ 26 [#49].

C.     *The Property and the Plaintiffs*

Pocahontas Spring is a natural source of mineral water located at 165 Lowell Street in Lynnfield, Massachusetts. Id. at ¶¶ 7, 28. It has operated as a commercial business since 1901. Id. at ¶ 28. The spring is located in a residential neighborhood, but the property on which the spring sits has been granted a non-conforming use exception to Lynnfield's zoning bylaws. Id. The spring is regulated by the Massachusetts Department of Environmental Protection ("DEP") Drinking Water Program and the Lynnfield Board of Health. Id.

BCW is a limited liability company that owns and operates Pocahontas Spring, and Gattineri is BCW's manager. Id. at ¶¶ 7-8. BCW purchased 165 Lowell Street in 2014 with the intention of expanding the spring water business. Id. at ¶¶ 28-29. Gattineri alleges that "Pocahontas Spring is also a spiritual gathering place for Native Americans and individuals, such as Gattineri, who practice certain spiritual and religious beliefs." Id. at ¶ 2. Gattineri installed Native American spiritual artifacts and Catholic religious symbols throughout Pocahontas Spring to honor his beliefs and to create a place for "private prayer." Id. at ¶ 30.

D.     *The Alleged Conspiracy*

1.     Initiation of the Alleged Conspiracy

In the winter and spring of 2014-2015, Board of Health Director McRae allegedly began receiving phone calls from Lynnfield residents reporting concerns about Gattineri's Italian heritage and purported connection to organized crime and claiming that work was being done on the property without the necessary permits. Id. at ¶ 31. Plaintiffs believe that these rumors were initiated by Green Belt President Farell and spread by him to other members of the Green Belt. Id. McRae relayed these reports to the Board of Health, Director of Planning and Conservation Adelson, and the DEP. Id. at ¶¶ 16, 31.

Plaintiffs allege that, based on these complaints, the Lynnfield officials began to conspire with the neighbors to discriminate against Gattineri based on his spiritual and religious beliefs "as part of an overall effort to drive [him] out of [t]own" and "to take the public water supply that sources the Pocahontas Spring . . . in order to supplement the [Lynnfield Center Water District's] water supply." Id. at ¶¶ 32-33, 43. The conspiracy allegedly consisted of Lynnfield officials selectively responding to citizen complaints about BCW "by enforcing zoning and conservation regulations in an unfair and discriminatory fashion, and by delaying and/or denying approvals for permits and other authorizations for work" while ignoring Plaintiffs' reports of violations against them. Id. at ¶ 34.

      2.     Conservation Commission Enforcement Actions

        a.     2016 Enforcement Order

On July 27, 2016, the Conservation Commission issued an enforcement order enjoining unauthorized construction on the protected wetlands within the property. Id. at ¶ 45. BCW alleges that at a hearing on the enforcement order, the Conservation Commission refused to allow certain Native Americans in attendance to explain the spiritual value of Pocahontas Spring to them. Id. In addition, over the next year, Adelson and then-Chairman of the Conservation Commission Martindale allegedly entered Pocahontas Spring to take pictures of and to inspect the premises without providing the required notice. Id. at ¶ 47.[3]

---

[3] In January 2017, BCW brought an action in Essex Superior Court for certiorari review of the enforcement order under Mass. Gen. Laws ch. 249, § 4. Complaint, Boston Clear Water Co. LLC v. Conservation Comm'n of Lynnfield, No. 1777-cv-01722 (Mass. Super. Jan. 17, 2017). BCW ultimately stipulated to dismissal of all claims without prejudice. Stipulation of Dismissal, Boston Clear Water Co. LLC v. Conservation Comm'n of Lynnfield, No. 1777-cv-01722 (Mass. Super. Apr. 11, 2017).

   b.  2017 Order of Conditions

In May 2017, BCW filed a notice of intent to do work on the property. Id. at ¶ 50.

Specifically, BCW sought to install a septic system, to construct an addition to an existing water distribution building, to replace utility lines from the spring to the existing water distribution building, to remove debris adjacent to the wetlands near the spring, to install security fencing, to construct a circular arbor and new water distribution station, to build a new vehicle storage area, and to replace the existing driveway by building a new driveway to that vehicle storage area. Following three public hearings, several site visits, and review of reports written by the parties' consultants, the commission issued an order of conditions approving all but two improvements sought by BCW.

Boston Clear Water Co., LLC v. Conservation Comm'n of Lynnfield, 97 Mass. App. Ct. 1116,

145 N.E.3d 902, 2020 WL 2311966, at *1 (2020). Plaintiffs allege that Chairperson of the Board

Crawford, then-Town Administrator Boudreau, Assistant Town Administrator Curtin, Adelson,

Martindale, McRae, then-Chief of Police Breen, and Administrative Assistant Barrasso

encouraged and facilitated opposition to the project from the neighbors and the Lynnfield Center

Water District. Am. Compl. ¶¶ 50-51, 53 [#49]. This was allegedly done for the purpose of

"secur[ing] the public water supply for other purposes," including the development of a golf

course. Id. at ¶¶ 39, 51, 54.

  While the Conservation Commission was considering the proposed project, Adelson and

Martindale allegedly made unannounced visits to the property in response to neighbors' claims

that BCW was doing unauthorized work. Id. at ¶ 52. Lynnfield also allegedly hired an

environmental consulting company to review the proposed project and directed it to make a

finding that Pocahontas Spring was not on any Native American land to undermine Gattineri's

potential First Amendment claims and "to intimidate [him] into renouncing his belief in and

devotion to the sacred, spiritual qualities" of the spring. Id. at ¶¶ 53-57. When the Conservation

Commission finally approved the project, it did so conditionally, and allegedly "unlawfully

sought to expand" the buffer zone "without any legal authority to do so." Id. at ¶ 58.

In January 2018, BCW brought an action in Essex Superior Court for certiorari review of the order of conditions and for an unconstitutional taking in violation of the United States and Massachusetts constitutions. Complaint, <u>Boston Clear Water Co. LLC v. Conservation Comm'n of Lynnfield</u>, No. 1877-cv-00055 (Mass. Super. Jan. 10, 2018). A Superior Court judge granted the Conservation Commission judgment on the pleadings, concluding that the Conservation Commission had not acted arbitrarily, capriciously, or abused its discretion but rather that it "did not act hastily," "relied on substantial evidence from its peer review expert," and provided "ample discussion" justifying its reasons for the limitations on the project. Mem. & Order, <u>Boston Clear Water Co. LLC v. Conservation Comm'n of Lynnfield</u>, No. 1877-cv-00055, at *12-13 (Mass. Super. Mar. 20, 2019). BCW appealed to the Massachusetts Appeals Court, arguing that the Conservation Commission imposed some of the limitations in the order of conditions "to appease angry neighbors and abutters." <u>Boston Clear Water Co.</u>, 2020 WL 2311966, at *3. The Appeals Court concluded that there was "no support for this contention in the record" and affirmed the judgment. <u>Id.</u> at *4.

   c.  2019 Enforcement Order

In June 2019, the Conservation Commission issued another enforcement order after discovering that BCW had installed two granite benches and a cross in the wetlands buffer zone. Am. Compl. ¶ 60 [#49]. Plaintiffs allege that there was "no valid basis" for the enforcement order and that it was enacted to "directly attack[] Gattineri's religious beliefs" and to "attempt to coerce or intimidate Gattineri into relinquishing or otherwise ceasing to practice his religious beliefs." <u>Id.</u> at ¶¶ 60-62. They also claim that Conservation Commission officials secretly entered the property to take pictures without authorization. <u>Id.</u> at ¶ 63.

In a related state court action, BCW sought certiorari review of the enforcement order in Essex Superior Court and brought a claim for trespass against members of the Conservation Commission who had come onto the property and taken pictures of the unauthorized work. Mem. & Order, Boston Clear Water Co. LLC v. Conservation Comm'n of Lynnfield, No. 1977-cv-01200, at *7-8, 14 (Mass. Super. Jan. 15, 2021). A Superior Court judge granted the Conservation Commission judgment on the pleadings, concluding that the Conservation Commission had not abused its discretion in issuing the enforcement order. Id. at *14. The judge also concluded that the trespassing claim lacked merit where the December 2017 order of conditions granted the Conservation Commission the right to enter and inspect the property to evaluate compliance with the order. Id. BCW appealed the judgment, and that appeal is currently pending before the Appeals Court.

> d.     2019 Order of Conditions

On August 30, 2019, BCW filed another notice of intent to do work in the wetlands area and buffer zone. Complaint, Boston Clear Water Co., Inc. v. Town of Lynnfield, No. 1977-cv-01539, at 2 (Mass. Super. Nov. 15, 2019). The Conservation Commission scheduled a public hearing to discuss the proposed project on September 17, 2019, but that hearing was not held until September 24, 2019. Id. at ¶¶ 22, 24. BCW filed an appeal to the DEP, claiming that the Conservation Commission was required by statute to hold a hearing within twenty-one days of the filing of the notice of intent and that the four-day delay stripped the Conservation Commission of jurisdiction and vested jurisdiction with the DEP. Id. at ¶ 23.

In November 2019, BCW filed an action in Essex Superior Court seeking certiorari review of the Conservation Commission's failure to hold the hearing within twenty-one days. Complaint, Boston Clear Water Co., Inc. v. Town of Lynnfield, No. 1977-cv-01539, at 6 (Mass.

Super. Nov. 15, 2019). Meanwhile, the Conservation Commission issued an order of conditions

denying the proposed project on February 18, 2020. Amended Complaint, <u>Boston Clear Water</u>

<u>Co., Inc. v. Town of Lynnfield</u>, No. 1977-cv-01539, at 2 (Mass. Super. Mar. 4, 2020). At some

point, the DEP also rendered a superseding order of conditions. <u>Id.</u> at ¶ 26. BCW thereafter filed

an amended complaint seeking a declaration that the Conservation Commission lacked

jurisdiction and that jurisdiction to act on the project now rested with the DEP. <u>Id.</u> at 7-8. A

Superior Court judge entered judgment for the defendants, concluding that the Conservation

Commission had not lost jurisdiction over the project and upholding the denial of the proposed

project. Judgment, <u>Boston Clear Water Co., Inc. v. Town of Lynnfield</u>, No. 1977-cv-01539

(Mass. Super. Dec. 2, 2020). The judge also denied BCW's motion for reconsideration.

Endorsement on Motion for Reconsideration, <u>Boston Clear Water Co., Inc. v. Town of</u>

<u>Lynnfield</u>, No. 1977-cv-01539 (Mass. Super. Dec. 21, 2020). BCW appealed, and the matter is

pending before the Appeals Court.

> e.      2020 Ongoing Enforcement Actions

In addition to the above, Plaintiffs claim that Conservation Commission officials have

continued to communicate with the neighbors "to obtain information used to create the

appearance of legitimate enforcement action." Am. Compl. ¶ 71 [#49]. These actions include

investigating neighbors' reports that BCW had emptied harmful chemicals into the wetlands and

had unlawfully cut trees in the buffer zone, issuing a cease-and-desist order based on BCW's

alleged installation of a water tank and unpermitted grading work, and inspecting ongoing work

without authorization to do so. <u>Id.</u>

3.      Zoning Enforcement Actions

a.      2017 Request

In May 2017, Police Chief Breen allegedly met with some of the neighbors and stated that he would "support any complaint they filed with the Building Inspector." Id. at ¶ 75. The neighbors filed a complaint with John Roberto, the Building Inspector at that time, asserting that BCW's operation of Pocahontas Spring as a commercial spring water business violated the Lynnfield zoning bylaw. Id. Roberto denied the petitioners' request that enforcement action be taken against BCW, but Breen, Crawford, Boudreau, Curtin, and Barasso then allegedly facilitated an appeal of Roberto's decision to the ZBA. Id. The neighbors ultimately withdrew their appeal in November 2017. Id. at ¶ 80.

b.      2018 Request

In May 2018, Bliss, Gallucci, O'Brien, and another neighbor, John Sievers, made a second enforcement request to Roberto. Id. at ¶ 81. Roberto again denied the neighbors' request, and they again appealed to the ZBA with the help of Curtin, Barasso, Crawford, and Dolan. Id. The ZBA upheld Roberto's decision, finding that the commercial spring water business was a preexisting nonconforming use that had not been abandoned or unlawfully extended but that operation of the business was not a use allowed as of right because the spring was not a "public water supply" within the meaning of the zoning bylaw. Complaint, Ex. A—Board of Appeals Decision, O'Brien v. Shaffer, No. 19 MISC 000071 (Mass. Land Ct. Feb 11, 2019).

Both BCW and the neighbors appealed the ZBA's decision. See Boston Clear Water Company, LLC v. Lynnfield Zoning Bd. of Appeals, No. 1977-cv-00187 (Mass. Super. Feb. 6, 2019); Sievers v. Boston Clear Water Company, LLC, No. 1977-cv-00206 (Mass. Super. Feb.

11, 2019; <u>O'Brien v. Shaffer</u>, No. 19 MISC 000071 (Mass. Land Ct. Feb. 11, 2019).[4] Plaintiffs allege that the neighbors' appeal was facilitated by Defendants Crawford, Dolan, Curtin, Barrasso, and non-party Farrell "to encourage and facilitate the [n]eighbors' petitioning activity," "to cover up the scheme to prevent BCW from operating as a commercial spring mineral water business," and "to drive Plaintiffs out of Town." Am. Compl. ¶ 84 [#49].

      c.     2020 Enforcement Actions

In the summer of 2020, Roberto retired, and O'Callaghan replaced him as the new Building Inspector. <u>Id.</u> at ¶ 85. Crawford is alleged to have taken advantage of this change in personnel to conspire with the neighbors to instigate more enforcement actions against BCW, including multiple bylaw and building code violations "for things such as idling trucks, use of compression brakes, improper lighting based on the use of security spotlights and ornamental string lighting, and the installation of signage and water tanks." <u>Id.</u> BCW appealed these enforcement actions to the ZBA. <u>Id.</u>

While the appeals were pending before the ZBA, Lynnfield filed an action in Essex Superior Court against BCW and Virgil Lynnfield Properties, LLC ("Virgil")—a company owned by members of Gattineri's family, <u>id.</u> at ¶¶ 41, 91—seeking injunctive and declaratory relief "to prevent [their] continued flouting" of Lynnfield's zoning, general, and wetlands

---

[4] On June 1, 2021, a Land Court judge granted the ZBA's motion for summary judgment, upholding the ZBA's conclusion that BCW's commercial use of the property was not allowed as of right. Mem. & Order, <u>O'Brien v. Shaffer</u>, No. 19 MISC 000071 (Mass. Land Ct. Jun. 1, 2021). The judge then severed the petitioners' and the ZBA's cases, <u>id.</u> at 22, and entered judgment for the ZBA, <u>see</u> Judgment, <u>Boston Clear Water Company, LLC v. Lynnfield Zoning Bd. of Appeals</u>, No. 19 MISC 00254 (Mass. Super. Jun. 1, 2021). BCW appealed. Not. of Appeal, <u>Boston Clear Water Company, LLC v. Lynnfield Zoning Bd. of Appeals</u>, No. 19 MISC 00254 (Mass. Super. Jun. 18, 2021). Meanwhile, the action brought by Bliss, Gallucci, and O'Brien regarding whether the operation of the spring water business is a lawful, preexisting, nonconforming use remains pending before the Land Court.

bylaws, as well as the state building code. Complaint, <u>Lynnfield v. Boston Clear Water Co., LLC</u>, No. 2077-cv-00738, at ¶ 1 (Mass. Super. Jul. 28, 2020). The parties stipulated to an order of preliminary injunction, but Plaintiffs claim that despite their concessions, Lynnfield still pursued its claim for injunctive relief relative to inspection rights. Am. Compl. ¶¶ 86-87 [#49].

Plaintiffs allege that the Superior Court judge ruled against Lynnfield's request, which was "part and parcel of its overall scheme to hold the Plaintiffs to standards that are not applicable to any other landowner in Lynnfield." <u>Id.</u> at ¶ 87. However, the Superior Court judge endorsed Lynnfield's motion for a preliminary injunction as follows:

> This is a long running dispute beginning long before the filing of this action. Given the apparent enmity between the parties it is necessary for the court to dictate rules as to some issues in this case. While this case is pending, the Building Inspector will have a right to inspect on a full 24 hours notice Monday through Friday, holidays excluded, 9am-5pm. The Conservation Commission will have the same right on 3 full business days notice. The defendants shall not engage in an "activity that alters a wetlands resource" without advanced written (including email) approval. [NB If the town (or any party) acts unreasonably the court will review the matter on an expedited basis.]

Endorsement, <u>Lynnfield v. Boston Clear Water Co., LLC</u>, No. 2077-cv-00738 (Mass. Super. Sept. 10, 2020). In addition, the parties' stipulated order of preliminary injunction grants Lynnfield all the remaining injunctive relief sought in its motion. Stipulated Order of Preliminary Injunction, <u>Lynnfield v. Boston Clear Water Co., LLC</u>, No. 2077-cv-00738 (Mass. Super. Sept. 10, 2020). BCW answered the complaint on September 22, 2020, and the matter is in discovery. Answer, <u>Lynnfield v. Boston Clear Water Co., LLC</u>, No. 2077-cv-00738 (Mass. Super. Sept. 22, 2020).

4.      Board of Health Withholding of Information

In July 2020, Plaintiffs allegedly discovered that certain neighbors had been improperly tapping into water from Pocahontas Spring rather than from the wells on their own properties or the Lynnfield water supply. Am. Compl. ¶ 89 [#49]. Gattineri alleges that he has sought

information about the neighbors' water systems for years but that the Board of Health has denied him that information in order to cover up the fact the water is being diverted from the spring. Id. at ¶ 90.

5.      Historical Commission Designation

163 Lowell Street, which is immediately adjacent to Pocahontas Spring, was owned by the Sievers. Id. at ¶ 41. As part of a settlement agreement, the Sievers sold the property to Virgil.[5] Id. at ¶ 91. In June 2020, Virgil filed an application to raze a house on the property known as the "old Smith family homestead." Id. Believing that Virgil was a "shell company" run by Gattineri and BCW, Crawford and Dolan allegedly directed the Lynnfield Historical Commission to give 163 Lowell Street an improper historical preservation designation to prevent BCW from expanding the spring water business. Id. at ¶¶ 91-92. The Historical Commission voted in favor of the designation, but the designation was ultimately reconsidered and withdrawn after Gattineri informed the town that because BCW was not given notice of the meeting at which the vote was taken, the meeting violated the state open meeting law. Id. at ¶¶ 92-94.

6.      Lynnfield Police Department Enforcement

In addition, the Lynnfield police department allegedly more strictly enforced Conservation Commission orders against BCW than against other citizens and offered less protection to BCW than to other citizens. Id. at ¶ 96. For instance, while the Lynnfield police department would accompany members of the Conservation Commission to stop BCW from doing allegedly unlawful work on the property, it did not investigate or take any action against

---

[5] In June 2017, BCW brought a declaratory judgment action against the Sievers seeking a declaration establishing BCW's rights to use a portion of the Sievers' property for parking and access to the spring. Complaint, Boston Clear Water Co. LLC v. Sievers, 1777-cv-00879 (Jun. 14, 2017). The parties settled and stipulated to a dismissal with prejudice in November 2019. Stipulation of Dismissal, Boston Clear Water Co. LLC v. Sievers, 1777-cv-00879 (Dec. 4, 2019).

Green Belt when BCW reported that a tree fell from Green Belt's property into a buffer zone. Id. at ¶ 98. The Lynnfield police department also allegedly failed to give Gattineri the protection it offered other citizens, such as when it failed to investigate BCW's reports of vandalism and hate crimes on property. Id. at ¶¶ 104-107.

       7.     Public Records Requests

Finally, Plaintiffs allege that, on several occasions, Lynnfield officials including Adelson, McRae, Curtin, Boudreau, and Dolan intentionally withheld or delayed documents requested under the public records law and manipulated the open meetings law to hide the conspiracy. Id. at ¶¶ 36-37, 41, 45, 111-13.

       E.     *The Suit Against the Neighbors*

In addition to the state court actions already described, one additional case is relevant background. In November 2017, BCW initiated an action in Essex Superior Court against O'Brien, Bliss, Gallucci, Farell, Green Belt, and the Sievers. Mem. & Order, Boston Clear Water Co. LLC v. O'Brien, No. 1777-cv-01722, at *1-2 (Mass. Super. Sept. 21, 2018). The complaint alleged that the defendants had engaged in a coordinated effort to block BCW's expansion plans and asserted claims of tortious interference with advantageous business relations, defamation, and civil conspiracy. Boston Clear Water Co. LLC v. O'Brien, 97 Mass. App. Ct. 1109, 144 N.E.3d 307, 2020 WL 1650707, at *1 (2020).

The defendants moved to dismiss the complaint pursuant to Mass. Gen. Laws ch. 231, § 59G, the state anti-SLAPP statute, and for failure to state a claim. Id. The "record contain[ed] evidence that prior to 2014, the commercial use of the property consisted primarily of retail sales to individual customers, and that the business slowed or was dormant between 2012 and 2014." Mem. & Order, Boston Clear Water Co. LLC v. O'Brien, No. 1777-cv-01722, at *3 (Mass.

Super. Sept. 21, 2018). But "[s]hortly after purchasing the property, BCW[] began parking commercial tanker trucks on the property able to hold and transport large quantities of the spring water off the site." Id. A Superior Court judge concluded that all the neighbors' behavior complained of by BCW had been made "before public boards or to town officials, in judicial proceedings, or in an effort [by the defendants] to communicate their concerns to other community members" about the "increased commercial activities around the spring." Id. at *3, 5. The judge accordingly allowed the defendants' special motion to dismiss under the anti-SLAPP statute, concluding that BCW's tortious interference and defamation claims were based solely on protected petitioning activity. Id. at *3. The Appeals Court affirmed. Boston Clear Water Co., 2020 WL 1650707 at *1.

## II.      Procedural History

On July 24, 2020, Plaintiffs initiated this action against Lynnfield and the Lynnfield officials. Compl. [#1]. They filed an Amended Complaint [#49] on January 6, 2021, alleging multiple violations of the constitution and state law. Defendants filed a Motion to Dismiss [#53], and the court held a hearing on the motion on August 4, 2021.

## III.      Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A

claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). In addition, "an adequate complaint must include not only a plausible claim but also a plausible defendant." See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).[6]

## IV.    Discussion

A.    *Section 1983 Claims*

Section 1983 creates a civil cause of action against an individual acting under color of state law who violates a plaintiff's federally protected rights. 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). Defendants do not dispute that the Lynnfield officials were, at all times relevant, acting under color of state law. At issue is only whether Plaintiffs were deprived of a legally cognizable right.

Additionally, in Massachusetts, claims brought under section 1983 are subject to a three-year statute of limitations. Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). "The first step in fixing accrual is to identify the actual injury of which the plaintiff complains." Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994) (citing Heck v. Humphrey, 512 U.S. 477, 489

---

[6] Defendants also moved to dismiss on the ground that the court should abstain from exercising its jurisdiction under the doctrine set forth in Younger v. Harris, 401 U.S. 37, 54 (1970). See Defs' Mem. 7-8 [#54]. However, at the hearing on the motion, both parties agreed that the court should address the case on the merits and, to avoid any potential interference with the state court actions, stipulated that the court should treat all state court judgments as final determinations, even where there was a pending state court appeal.

(1994)). "Section 1983 claims generally accrue when the plaintiff knows or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt." Morán Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008) (internal quotation marks and citations omitted).

     1.     Freedom of Assembly (Count I) and Free Exercise of Religion (Count II)

The first two causes of action are brought against all Defendants for violation of Gattineri's First Amendment rights to freedom of assembly and free exercise of religion. Am. Compl. ¶¶ 114-30 [#49]. The Amended Complaint [#49] states that Defendants "coordinated" the Lynnfield Police Department, the Lynnfield Fire Department, and the Conservation Commission "to interfere with and interrupt Gattineri's gatherings and private worship," to "challeng[e] the heritage of the Native Americans" who were guests on the property, and to "question[] the sincerity of Gattineri's religious beliefs." Id. at ¶¶ 116-17. It alleges further that Defendants "used Town enforcement to deny Gattineri his freedom to pray" and his "right to express his religious views"  by "sending police and fire department employees to the [p]roperty when votive candles and incense were burning and quiet liturgical music was playing," "alleging [conservation and zoning] violations based on the placement of a cross, benches and a plaque engraved with religious passages," and "failing to investigate when religious artifacts were desecrated." Id. at ¶¶ 124-25.

As an initial matter, several of the alleged violations are time-barred. First, Gattineri claims that the Conservation Commission refused to hear from certain Native Americans about the spiritual value of Pocahontas Spring at a hearing on the July 2016 enforcement order. Id. at ¶ 45. Second, he alleges that in August 2016 and May 2017, Adelson and Martindale disrupted

various Native American services and took unauthorized photographs of Native American displays on the property. Id. at ¶ 47. Where the action was not commenced until July 24, 2020, claims based on this conduct brought under section 1983 are barred by the three-year statute of limitations. See Nieves, 241 F.3d at 51. Plaintiffs argue that they "did not learn—and could not have learned—of their causes of action until after November 25, 2019," when they received a number of emails between the neighbors and Defendants as part of their settlement with the Sievers, and that "as such, the limitations period did not accrue until that time." Pls' Opp. 10 [#61]. However, that argument is mistaken where Gattineri was aware of his alleged injuries, if not the alleged discriminatory animus that motivated them, at the time that they occurred. Cf. Marrero-Gutierrez v. Molina, 491 F.3d 1, 6 (1st Cir. 2007) ("[T]his circuit has rejected the contention that claims do not accrue until the plaintiff knows of both the injury and the discriminatory animus").

Another allegation is countered by factual findings in the state court actions. Plaintiffs claim that the Conservation Commission's 2019 enforcement order "directly attacked Gattineri's religious beliefs," where it "had no valid basis for its issuance" and required him to remove two benches with religious inscriptions and a cross from the wetlands buffer zone. Id. at ¶¶ 60-61. However, an Essex Superior Court judge upheld the enforcement order, finding that BCW had placed the benches in the buffer zone and that "in bringing the cross to the top of the hillside, BCW altered land, without permission, within a resource area." Mem. & Order, Boston Clear Water Co. LLC v. Conservation Comm'n of Lynnfield, No. 1977-cv-01200, at *11, 14 (Mass. Super. Jan. 15, 2021).

Turning to the remaining allegations, to state a claim for violation of the right to free exercise of religion, a plaintiff must allege that a defendant personally and unjustifiably placed a

18

substantial burden on his religious practices. See Hernandez v. Comm'r, 490 U.S. 680, 699 (1989) ("The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden"). A substantial burden "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd., 450 U.S. 707, 717–18 (1981). The related right to freedom of assembly has been largely subsumed into a broad right of expressive association. See Timothy Zick, Recovering the Assembly Clause, 91 Tex. L. Rev. 375, 377 (2012) ("the freedom of assembly was transformed into a right of association"). "[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. City of Dallas v. Stanglin, 490 U.S. 19, 24 (1989) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984)). To violate the constitution, government action that interferes with such associational rights must "affect in [a] significant way the existing members' ability to carry out their various purposes." Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 548 (1987).

After removing the time-barred allegations and those contradicted by the findings of fact in the state court actions, Plaintiffs' allegations are insufficient to state a claim under the First Amendment. Gattineri alleges that, in August 2017, Adelson and Martindale "confront[ed] and challenge[d]" his Native American guests about their "heritage and ethnicity." Am. Compl. ¶ 52 [#49]. This single incident does not rise to the level of a "significant interference" with Gattineri's ability to associate with his Native American guests and to practice his religion. In addition, Gattineri alleges that, "on information and belief," Boudreau and Crawford directed the Lynnfield Center Water District to require an external environmental consultant to find that

Pocahontas Spring was not on Native American land. Id. at ¶ 56. However, Gattineri does not have any protected right to a finding that Pocahontas Spring is on Native American land. Insofar as he objects to those proceedings, his recourse is a certiorari action under Mass. Gen. Laws ch. 249, § 4.[7]

       2.      Right to Earn a Living (Count III)

Plaintiffs' third cause of action is brought against all Defendants for violation of Plaintiffs' "fundamental right to earn a living" under the Fourteenth Amendment. Id. at ¶¶ 131-39. However, the First Circuit has concluded that no such fundamental right exists. Medeiros v. Vincent, 431 F.3d 25, 32 (1st Cir. 2005), abrogated in part on other grounds by Bond v. United States, 564 U.S. 211 (2011) ("The right to 'make a living' is not a 'fundamental right,' for either equal protection or substantive due process purposes"). Plaintiffs therefore have not stated, and cannot state, a claim for violation of such a right.

       3.      Equal Protection (Count IV)

Plaintiffs' fourth cause of action is brought against Lynnfield, Breen, Adelson, Cademartori, Martindale, and O'Callaghan for selective enforcement and violation of the right to equal protection. Am. Compl. ¶¶ 140-48 [#49]. To state an equal protection claim for selective

---

[7] Several of Gattineri's other allegations, which state that the Lynnfield Police and Fire Departments violated his religious freedom, seem to raise a claim for failure to protect rather than violation of the First Amendment. See id. at ¶¶ 104-10. The First Circuit has recognized such claims only in the context of excessive force. See, e.g., Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) ("An officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers"); Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance"). However, even if a failure to protect claim were viable in broader circumstances, it would not be viable here where Gattineri has failed to establish any constitutional violation.

enforcement, a plaintiff must show that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (internal quotations omitted). Although the "formula for determining whether individuals or entities are 'similarly situated' . . . is not always susceptible to precise demarcation," the "test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Aponte-Ramos v. Álvarez-Rubio, 783 F.3d 905, 909 (1st Cir. 2015) (internal quotations omitted). "In other words, apples should be compared to apples." Id. (internal quotations omitted).

Plaintiffs repeatedly assert that they were treated differently from similarly situated individuals and businesses, but they provide few factual allegations in support of that conclusion. The Amended Complaint [#49] alleges that the Lynnfield Police Department and the Conservation Commission responded to the neighbors' complaints about Plaintiffs' work and activities on the property that allegedly violated zoning and conservation regulations but did not respond to Gattineri's complaints that Green Belt had conducted illegal activities in the wetlands buffer zone. Id. at ¶ 98. There is ample evidence from the state court litigation, however, that Plaintiffs were subject to multiple enforcement orders, which have been upheld by the Superior and Land Courts, and that the Conservation Commission had the right to enter and inspect the property to evaluate compliance with those orders. See Mem. & Order, Boston Clear Water Co. LLC v. Conservation Comm'n of Lynnfield, No. 1977-cv-01200, at *14 (Mass. Super. Jan. 15, 2021). Where there is no allegation that Green Belt was subject to similar sanctions and oversight for failure to comply with local laws and regulations, Plaintiffs have failed to

demonstrate that they were "similarly situated in all relevant respects." Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001). Plaintiffs have therefore failed to state a selective enforcement claim.

B.    *Conspiracy Claims (Counts V-VI)*

Plaintiffs' next two causes of action are for conspiracy pursuant to 42 U.S.C. § 1985(3) and failure to prevent a conspiracy pursuant to 42 U.S.C. § 1986. The first clause of section 1985(3) provides a cause of action for a private conspiracy to deny equal protection of the laws. 42 U.S.C. § 1985(3). A section 1985(3) claim has four elements:

> First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right.

Parker v. Landry, 935 F3d 9, 17-18 (1st Cir. 2019) (modifications omitted) (quoting Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). Section 1986 provides that anyone who knows of a conspiracy that would violate section 1985, has the power to prevent it, and fails to do so, is also liable as a conspirator. 42 U.S.C. § 1986. Where Plaintiffs have not stated a claim for violation of any constitutionally protected right, the section 1985(3) conspiracy claim fails, as does the section 1986 claim, absent a valid cause of action under section 1985.

C.    *State Law Claims (Counts VII-X)*

Where the court dismisses all of Plaintiffs' federal claims, it declines to exercise jurisdiction over the pendant state law claims. See Rivera v. Murphy, 979 F.2d 259, 264–65 (1st Cir. 1992) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

## V.        Conclusion

For the foregoing reasons, Defendants' <u>Motion to Dismiss</u> [#53] is GRANTED.

IT IS SO ORDERED.

August 17, 2021                                                    /s/ Indira Talwani
                                                                          United States District Judge